*498 OPINION OF THE COURT
Larry D. Martin, J.
In this CPLR article 78 proceeding, petitioner Vincent Tesonero seeks a judgment: (1) annulling the February 6, 2006 determination of respondent Board of Trustees of New York Fire Department Pension Fund, subchapter 2, sued herein as Board of Trustees of New York Fire Department Article 1-B Pension Fund (Board of Trustees), which denied his application for an accident disability pension pursuant to Administrative Code of the City of New York § 13-354 (the Lung Bill),[1] (2) declaring said determination to be arbitrary and capricious, and (3) directing the Board of Trustees to retire him with an accident disability pension. Petitioner requests, in the alternative, a judgment directing a trial of the factual or medical issues involved herein pursuant to CPLR 7804 (h) or a judgment directing that the Board of Trustees allow him and/or his representatives to present such testimony as is necessary at a hearing. Petitioner also seeks an order, pursuant to CPLR 2307 (a), compelling respondents to provide discovery.
On July 25, 1993, petitioner was appointed to the uniformed force of the New York City Fire Department (the NYFD) and served continuously as a member of the NYFD until his retirement. At all relevant times, petitioner was a member of the NYFD Pension Fund, subchapter 2. Petitioner was at the World Trade Center site on September 11, 2001, the date of its collapse, and allegedly suffered significant exposure to dust and products of combustion. Petitioner subsequently developed a cough, nasal congestion, shortness of breath, wheezing, a sore throat, acid reflux and eye irritation.
On March 8, 2004, petitioner was examined by the NYFD Medical Board Committee of the Bureau of Health Services of the Fire Department (the Medical Board Committee of the *499 BHS),[2] which diagnosed petitioner with “clinical asthma” and “airway hyperactivity.” In its report, the Medical Board Committee of the BHS noted the results of petitioner’s March 5, 2004 methacholine challenge test, which revealed that (off medications) there was “a 20% drop in FEV-1[3] with methacholine followed by a bronchodilator response.” The Medical Board Committee of the BHS found that, due to the presence of clinical asthma with wheezing, chest tightness and cough, as well as documented airway hyper-reactivity, that petitioner was “unfit for firefighting duties as future exposure to dust, noxious fumes and/or toxins may precipitate hfe-threatening bronchospasm.” It concluded that petitioner “has a partial permanent disability” and recommended that he be reclassified to light duty. Subsequently, the Fire Commissioner and the petitioner submitted applications for accident disability retirement (ADR) pursuant to Administrative Code of the City of New York §§ 13-353 and 13-354 with the Board of Trustees of the Medical Board of the NYFD Pension Fund, subchapter 2 (formerly article 1-B). On March 24, 2004, petitioner underwent a second methacholine challenge test[4] with Dr. Kenneth I. Berger, the medical director of the Pulmonary Function Laboratory at New York University Rusk Institute (NYU). Dr. Berger concluded that testing demonstrated “obstructive airway dysfunction” and evidence of “bronchial hyper-reactivity” during the methacholine bronchoprovocation at the time of test.
On September 8, 2005, petitioner was examined by the 1-B Medical Board of the New York City Fire Department Pension Fund, subchapter 2. It reviewed the March 8, 2004 report of the Medical Board Committee of the BHS, the report of Dr. Freilich dated November 8, 2004, the methacholine challenge report dated March 24, 2004, the pulmonary function report dated March 24, 2004, the methacholine challenge report dated March 5, 2004 and petitioner’s medical leave record. After examination and review of these medical documents, the Medical Board deferred making a final determination and referred petitioner to NYU for pulmonary function studies to include spirometry and lung volumes before and after bronchodilator and diffusion *500 capacity after being off all steroid-containing medications, and off bronchodilators for three to four days prior to the tests. On October 11, 2005, petitioner underwent these tests at NYU. According to Dr. Kenneth I. Berger, petitioner’s lung volumes, expiratory airflows and pulmonary diffusing capacity were within normal limits and he concluded that the results indicated a “normal pulmonary function test.”
On December 15, 2005, the Medical Board considered petitioner’s case a second time. In its six-sentence report, it noted that it reviewed the October 11, 2005 pulmonary function studies and that:
“these studies were essentially normal except for some small airway dysfunction. The history demonstrates ‘mild intermittent asthma’ and auscultation today is normal.
“It is the opinion of the 1-B Medical Board that the member is not disabled from performing full fire duty due to a respiratory condition and denies his application for the Lung Bill.”
On January 25, 2006, the Board of Trustees noted the recommendations of the Medical Board denying the application for ADR. By letter dated February 6, 2006, petitioner was notified that the Board of Trustees had reviewed his application for ADR at its meeting of January 25, 2006, and accepted the recommendation of the Medical Board, and that this constituted the final action on his application. On May 23, 2006, petitioner instituted this CPLR article 78 proceeding to challenge this determination and the Board of Trustees has interposed an answer to the petition.
“The issue of whether a firefighter is disabled as a result of a service-related accident is determined by the Medical Board of the New York City Fire Department Pension Fund, subchapter 2 (formerly art 1-B) ... Its determination that a firefighter is not disabled for duty is conclusive if it is supported by some credible evidence and is not irrational” (Matter of Kuczinski v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 8 AD3d 283, 284 [2004]; see also Matter of Borenstein v New York City Employees’ Retirement Sys., 88 NY2d 756, 760 [1996] [“In an article 78 proceeding challenging the disability determination, the Medical Board’s finding will be sustained unless it lacks rational basis, or is arbitrary or capricious”]; Matter of Drew v New York *501 City Employees’ Retirement Sys., 305 AD2d 408, 409 [2003] [“(T)he Medical Board’s determination is conclusive if it is supported by some credible evidence and is not irrational”]; accord Matter of Inguanta v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 302 AD2d 527 [2003]).
“[C]redible evidence is evidence that proceeds from a credible source and reasonably tends to support the proposition for which it is offered” (Matter of Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 90 NY2d 139, 147 [1997]). “[I]t must be evidentiary in nature and not merely a conclusion of law, nor mere conjecture or unsupported suspicion” (id.). “[A]n articulated, rational, and fact-based medical opinion” constitutes “credible evidence” (id. at 148). The Medical Board’s “detailed and fact-based report . . . explaining the basis for its conclusion . . . constitute^] credible evidence” (id. at 152).
If there is a difference in medical opinion on petitioner’s non-disability, such difference does not render the Medical Board’s determination, nor the Board of Trustees’ acceptance of that determination, arbitrary and capricious (see Matter of Manza v Malcolm, 44 AD2d 794 [1974]), since it is solely within the Medical Board’s province to resolve any conflict between medical opinions (see Kuczinski, 8 AD3d at 283; Matter of Bartsch v Board of Trustees of N.Y. City Fire Dept. Art. 1-B Pension Fund, 142 AD2d 577 [1988]). “The courts cannot weigh the medical evidence or substitute their own judgment for that of the Medical Board if the Medical Board’s determination is supported by any credible evidence and is not irrational” (Matter of Ruzicka v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 283 AD2d 581, 581 [2001]; see also Borenstein, 88 NY2d at 761; Matter of Schwarzrock v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 238 AD2d 596, 597 [1997], Iv denied 91 NY2d 803 [1997]). “Where . . . the [Medical Board] determines that an applicant is not disabled from performing firefighting duty due to an alleged injury or illness, the [Board of Trustees] must accept that determination and deny the applicant’s claim” (Schwarzrock, 238 AD2d at 597).
Petitioner argues that he is entitled to the presumption of Administrative Code § 13-354 that the disabling condition of his lungs was a result of an accidental injury and, therefore, he should not have been denied an accident disability retirement. Petitioner does not dispute the Medical Board’s determination *502 that he has “mild intermittent asthma.” Instead, petitioner contends that all of the competent medical evidence regarding “mild intermittent asthma” indicates that this condition makes it impossible for a firefighter to perform his or her duties without posing unacceptable risks to the firefighter and his or her colleagues. He argues that there is no competent evidence cited by the Medical Board which supports its determination that petitioner is not disabled.
In support of his claim that the determination of the Medical Board and the Board of Trustees was arbitrary and capricious, petitioner relies upon the March 8, 2004 report of the Medical Board Committee of the BHS. As noted above, the Medical Board Committee of the BHS found in its report, partially based upon a failed pulmonary function test known as a methacholine challenge, that petitioner had a partial permanent disability and it directed petitioner to continue on light duty. Petitioner argues that such determination renders irrational the Medical Board’s finding that he did not demonstrate himself to be unfit for full duty. Petitioner also relies on a second methacholine challenge test performed by Dr. Berger, which indicated that petitioner has “obstructive airway dysfunction” and evidence of “bronchial hyper-reactivity,” and argues that this supports his claim that he has reactive airway disease. Lastly, petitioner cites several medical journal articles which discuss reactive airway disease to support his argument that the Medical Board’s determination was arbitrary and capricious. He contends that these articles demonstrate that, although petitioner may appear normal if the sensitizing agent is removed, if that agent is reintroduced it can cause a significant asthmatic response, and, therefore, he can no longer perform his job as a firefighter due to his disability.
In opposition, respondents point out that the Medical Board has the sole authority to weigh conflicting medical evidence in determining whether an ADR applicant is, in fact, disabled. Respondents maintain that the court’s only function in the instant proceeding is to determine whether there is some credible medical evidence that supports the Medical Board’s finding. According to respondents, the record before the court contains abundant evidence supporting the Medical Board’s determination that petitioner is not disabled.
In reply, petitioner submits a copy of the Medical Board minutes for another firefighter diagnosed with “mild intermittent asthma” in which the Medical Board cited, as authoritative, *503 Guidelines for the Diagnosis and Management of Asthma (NIH Publication No. 97-4051 [Bethesda, MD]). Citing this article, petitioner points out that four different levels of severity of asthma are set forth: mild intermittent, mild persistent, moderate persistent and severe persistent; that asthma is “highly variable” and that an individual’s classification may change over time; that a patient “at any level of severity can have mild, moderate or severe exacerbations”; and that “patients at any level of severity should avoid: exposure to allergens to which they are sensitive; exposure to tobacco smoke and exertion when levels of air pollution are high.” Petitioner further contends that there is ample evidence that he is disabled and that the Medical Board has taken a position contrary to accepted standards, practices and protocols.
As a threshold matter, petitioner’s reliance upon the report of the BHS Medical Board Committee is misplaced, since the Committee is separate and distinct from the Medical Board, with separate responsibilities and different burdens of proof (see Matter of Nemecek v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 99 AD2d 954 [1984]). It is noted that the report of the BHS Medical Board Committee was merely for the limited purpose of determining petitioner’s duty status at that time, “[t]he question of disability for pension retirement purposes is confided to the Medical Board” (id. at 955; see also Inguanta, 302 AD2d at 527). It is well settled that where the Medical Board’s determination is based upon credible evidence, it may not be disturbed (Meyer, 90 NY2d at 147; Borenstein, 88 NY2d at 760-761; Kuczinski, 8 AD3d at 284; Schwarzrock, 238 AD2d at 597). On the record, however, this court finds that the Medical Board’s determination is not credible since its scant six-sentence determination is devoid of any articulated basis for concluding that “mild intermittent asthma” is not a disabling condition for a firefighter. Such findings are wholly conclusory without any explanation of the characteristics of “mild intermittent asthma,” the performance requirements for a firefighter, or an assessment of any risk that “mild intermittent asthma” may pose to the safety of the petitioner and his colleagues while performing his duties as a firefighter. Moreover, the report fails to identify any specific medical literature or other documentation which supports the Medical Board’s claim of nondisability, nor does the Medical Board explain the apparent inconsistency within its expert’s reports, i.e., that petitioner has “obstructive airway dysfunction” and bronchial hyper-reactivity, that *504 pulmonary studies are “essentially normal” with “small airway dysfunction,” and that petitioner has “mild intermittent asthma” although he is not disabled. Therefore, while the Medical Board’s report is binding upon the Board of Trustees, since the Medical Board’s report is not credible, it is insufficient (see Meyer, 90 NY2d at 152).
Accordingly, the court grants judgment to the petitioner on that branch of the petition which seeks to annul the findings of the Medical Board as to petitioner’s application for ADR based upon “mild intermittent asthma.” The matter is remanded to the Board of Trustees of the NYFD Pension Fund for new medical reports, new findings by the Medical Board, and a new determination by the Board of Trustees with respect to petitioner’s application for ADR benefits.

. Administrative Code § 13-354 (the Lung Bill) provides:
“Notwithstanding any other provision of this code to the contrary, any condition of impairment of health caused by diseases of the lung, resulting in total or partial disability or death to a member of the uniformed force, who successfully passed a physical examination on entry into the service of such department, which examination failed to reveal any evidence of such condition, shall be presumptive evidence that it was incurred in the performance and discharge of duty, unless the contrary be proved by competent evidence.”

. The three-member board of medical officers were: Doctors Weiden (board certified pulmonologist), Ortiz and Mannor.

. Force expiratory volume at one second (FEV-1).

. Dr. Michael Weiden, a member of the NYFD Medical Board Committee of the BHS, referred petitioner to New York University Rusk Institute for methacholine challenge testing.